Good morning, your honors. I'm Michael Millen. I am representing April Marino and her seven friends, who are the plaintiffs and appellants, who went to the city sidewalks of the fair town of Los Gatos, California, held signs that were pro-life in nature, passed out literature on the sidewalks, and were engaging in pro-life discourse with those who would pass by. For this behavior, they were arrested by the, three of them were arrested by the Los Gatos Police Department. The reason we are here today before this court is not on what might sound like some sort of a 1983 violation, because that has already been resolved in the form of a permanent injunction as against the city. Today this court is looking at two state statutes and has the opportunity on what I believe both counsel have found to be a rather fascinating legal question with not as much guidance as perhaps we would hope for, particularly in one of the plaintiffs would suggest is the more straightforward issue, which is whether under California Civil Code 52.1, there is a requirement of some sort of violence or threat of violence in order for a potential plaintiff to make out a civil rights cause of action. Plaintiffs, of course, contend that the Venegas court was correct. There is that 52.1 does not stand with 51.7, but are cases I would suggest to you as illustrative of this, given that this court is interpreting a state court statute. My review of the cases, which I will briefly give, I believe shows that these cases are that 51.7, which requires violence and membership in a protected class in order to make out one kind of civil rights violation, is quite distinct from 52.1, which is a more general civil rights violation statute. I will remind the court, if I might, that in 1998, the Supreme Court in Jones was very clear, the state Supreme Court I am speaking of, that coercion was what was necessary to make out a 52.1 claim. No speaking that violence was needed. This was different than what perhaps Boccato said in 1994, four years earlier. In 1994, Boccato found that 52.1 and 51.7 were intertwined statutes. And so because of that, in order to make a claim under 52.1, you needed to be able to make a claim under 51.7. Cabezuela made the same finding because it found that Boccato must be right. I will note that Judge Jeremy Fogle, the judge in this case, was actually the lower court judge in the Cabezuela case. In addition, there was a case in the mid-90s, Rabkin, from the Northern District of California, which said that the two statutes do appear to be intertwined. All that changed starting in the late 90s. In 1998, the Jones decision came down. In the year 2000, the legislature was clear that these 51.7 and 52.1 should not be read so closely as to import a 51.7 requirement into 52.1. In 2004, the California Supreme Court in Venegas said 52.1 is an independent statute apart from 51.7. They said that Boccato was wrong, and that is actually mentioned in the Venegas case, that Boccato was wrongly, was appeared inconsistent with the plain text of the statute. I note for the court that even the statute itself, the 52.1G, says this is independent of any right under 51.7. How much clearer does a legislator need to be when creating Statute B to give various rights that Statute B is independent of and gives rights unrelated to Statute A? I don't know what more the legislature could have said. The Venegas opinion was continued in 2006 by a California health court called Stamps. The Stamps court looked at 52.1 and 51.7, and they noted that the reason 52.1 was even created was because 51.7 says there has to be violence or threat of violence, and that's a very high level of social dysfunction. So instead of having to prevent people from being able to secure their civil rights, the problem with 51.7 is you have to be at this high level of social dysfunction. What do you want us to do? What I would like this Court to do is to find that 52.1 has no element other than coercion, and that when a, and that the 2005 District Court Cole case was correctly decided when it stated that a false arrest is a form of coercion that is all that is necessary to make out a 52.1 case. So what do you want us to do? Remand, reverse and? I would like, on the 52.1 cause of action, I'd like the Court to reverse the lower court's finding that 52.1 necessitates a finding of violence. And it's You aren't raising the, your first and second claims under 1983. No. Those are gone. No, this is all It's all state law. It's all state law, Your Honor. And so all we have before us is your request of finding the District Court was wrong in contending that violence is required in 50, in, in .1 as it is in .7. Yes, that's, that's the first half of the appeal. That's the first half. The second half of the appeal has to do with what I mentioned was a, a very, it's definitely an issue of first impression. Does 51.7, which has the violence requirement, what is the definition of violence? What is the violence we're talking about? So to give the example which kind of gives birth, birth to all this, assume, and this is a hypothetical, that a group of kind of Ku Klux Klan's type of people are walking through the streets. They have guns strapped on their waists, but they're not brandishing them. And so this group of KKK militia sees a group of minorities and says, I'm sorry, you're handing out literature. You're speaking about things that we don't like. We're going to come and lock you in the basement. So our KKK militia says, everybody, and they're not, they're not pointing their guns. They just have their guns strapped on. They say, everyone, please come to the basement. And so all these minorities who don't want to be shot go. Would that matter before us? If the Court just said violence doesn't apply, it didn't get to what violence is. I'm sorry, could you say that again? Well, the first thing that you're requesting is that violence is not required under Section 52.1, right? Yes. All right. If it isn't required, does the Court hold that there, what violence was? Yes. That's the second issue. So in other words, it's conceivable the Court could say that we've met the coercion element of 52.1, but in theory, this Court could say the lower Court was right. You didn't show violence in 51.7. So my goal is to ask this Court to find that the facts of this complaint show violence as that term is used in 51.7. You aren't going to be satisfied with 51.1. You want 51.7 in your quiver when you go back down. That's correct, Your Honor. That's correct. It is a different set of remedies, much more difficult. And you want us to define violence something like coercion so you can get in under 51.7? Exactly. Here's the question the Court has. Well, you spent a good deal of time telling us why the legislature has 51.1 and 51.7 different. Now your argument is, no, they're really the same. Coercion's enough under .7. No. No, no, no, no. The definition under .7 is violence. The definition I'm asking the Court to adopt, I believe, is the same one that opposing counsel has, which is force that leads to injury or abuse. That coercion can be much less than force that leads to injury or abuse. So the question where opposing counsel and I differ is whether, when someone is standing, when a group of armed men with guns on their waists say, you will come and do this, is that? I thought all that happened to them was a threat to arrest, right? Three of them were arrested. For three of these people, armed men with guns, they're called police, but I call them armed men with guns, told them, you will get into this car, you will come down to our police station, and they took them away. So if 52.1 is not applicable, why do we get into violence at all? Because everyone agrees, I think the lower court and all sides agree, that if there was violence, then 52.1 and 51.7 are met. The first difference was 52.1 doesn't require violence, and that's the first argument. The second is 51.7, which does require violence, and has a different set of remedies. There's a big penalty for 51.7. Every false arrest in California, then, becomes subject to this claim. That's correct. And Justice Baxter was quite concerned about that in his concurrence in Venegas. He said, do you understand, speaking to his fellow brothers and sisters on the court, that this could really hurt financially strapped counties, because if all it takes is an allegation of false arrest, then 52.1s are going to be popping up everywhere. And the answer was, that is a legislative function and not a judicial function. Okay. You stipulated to a judgment on the, there was a stipulated judgment on the Federal claims? Yes. On the one Federal claim, 1983, and the false arrest claim. So those that had a stipulated judgment. These two were dismissed on 12-6. Why didn't, why wasn't this just remanded to the, how did we get, oh, this was filed in Federal court to begin with? Yes. Yes. I suppose Judge Fogel could have done something about it, in terms of, you know, did he want to take the case or not? He thought that there was no merit to it, so he dismissed them. That's true. Now, we have an appeal to the Ninth Circuit. We've got plenty of work, where you want a novel interpretation of a State statute in California. I guess plaintiffs believe that this Court has an uncanny ability to discern the intent of the legislature, and so we trust this Court more than any other Court to come up with the right answer. No, but Your Honors, I guess the difficulty is, if you read the Venegas opinion, you'll see that the Venegas Court says this 52.1 seems like it could sink, could subject a lot of entities to liability. I mean, when one of the justices of the Court says this is a big deal, and years have gone by, the legislature has not amended it, I don't, I would encourage this Court to not say, oh, gee, you know, yes, I'm a judge, but I'm also a taxpayer. This is going to kill us all. Yes, if you're the first Court to ever think about that, but not when the California Supreme Court has said it's not a judicial function. So I would encourage the Court, one of the biggest difficulties plaintiffs have, and I think it's in the, you'll see it in the briefing, is in our opinion the defense did not distinguish between my Ku Klux Klan example of the very, very nice, dressed in white gentleman with guns who said, would you please get into the basement now, and the police. There's no super immunity. One of them is clothed with the power of the state. The Los Gatos Police Department, these folks had guns and said, please get into the car. So if I understand your approach, if we get the police in Los Gatos not to wear guns, then only point one would be involved. But once they strap on guns, because if someone gives them a hard time, they're liable to do some force, therefore automatically point seven applies also. Probably, although I'd note, I believe there are some countries where the police don't use guns, but they still have their own way, have guns on them, but they still have their own. Isn't that true in any arrest that there's a potential that someone might be injured if they are going to create difficulties for the police and they won't get into the squad and they have to take them by the arm and force them in, that there's liable to be something in every case? So aren't you saying that every time there's an arrest that point seven is involved, because it could lead, whether it does or not, it could lead to violence? Well, not just that it could lead, but by definition it is an intimidation by violence, even if there is no violence actual. Having people with guns say, please come over here, please get in, that's If that were the case, you may want to leave some time for rebuttal, but if that were the case, then they could very easily have provided a cause of action for arrest, arrest without probable cause or whatever you get at. I'll leave it at this, Your Honor. There is no distinction under California law that police officers get some extra right that my hypothetical Ku Klux Klan member doesn't get. I know there are immunities and I understand that under state law there's immunities, but if those immunities don't apply, there's no reason to give the police some benefit of the doubt. That's why they wrote the immunities into the government code. And remember, this is more than just an arrest. You have to show that the person was, because of their protected class characteristic, it's an arrest where the person is race, religion, political affiliation. 51.7 says you have to add that extra animus and show member of protected class. 52.1 is very bland. It's much easier to meet the 52.1. 51.7 is much tougher to meet for plaintiffs. And how do you meet it in this case? Due to religion? Yes, well, what happens in this case is it's on the videotape as one of the officers says, that sign disgusts me. You know, I'm a parent. That sign disgusts me. And I think you'll find that because of the content of the speech, that was an animus, political affiliation. But with that, I will stop. Do you want your case evaluated under 52.1 or 51.7? We have two causes of action. We'd like the 52.1 evaluated, and then we'd like the 51.7 evaluated. We've appealed both dismissals. Thank you. Thank you. Michael Cerverian for the town of Los Gatos and the individual police officers. In this case, the question of whether specific acts of violence need to be alleged to state a 52.1 claim is hardly settled. The appellant contends that Rapkin, which was a northern district case, and Cabezuela, which was a court of appeal case in the state, have no vitality left in them, citing Ticoll versus Emeryville, Jones versus K. Martin Venegas. However, even since we did the briefing on this case, there are additional authorities which lend credence to the argument that in order to show a 52.1 claim, you need to show violence or a threat of violence. For that, I would address the court to a district court case in July of 2007 called Austin B. versus the Escondido School District, a case in which two autistic preschoolers claimed abuse by their instructor. Have you cited those cases to us? No, I haven't, Your Honor. We have a procedure by which these cases come to you. You can mail them, the citations to us, letting counsel know, so we can be prepared at time of argument. Absent that, I suppose you could give the clerk the citations so we can go read them, but you ought to check our rules. I apologize, Your Honor. I did bring copies of the cases. I'd be more than happy to leave them with the clerk at the end of the day. In Austin B., what I found interesting about Austin B. was the fact that it was a case that went to trial, non-suit was granted, and there was an appeal. In the California jury instruction, the CASE instruction for 52.1, the Bain Act, included a violence requirement in it. The pertinent part of the instruction read that plaintiff's claims that defendant intentionally interfered with or attempted to interfere with his civil rights by threatening or committing violent acts. To establish the claim, plaintiff must prove the following. And the first element is that defendant interfered with or attempted to interfere with plaintiff's rights by threatening or committing violent acts. In the Austin B. case, the case, the matter was, the issue of the jury instruction was not challenged by either side. I also at that point looked at the jury instructions themselves and found that the judicial counsel in the preface to those instructions indicated that while the jury instructions are not a primary source of law, they are a statement or compendium of the law and a secondary source. Furthermore, there was an unpublished opinion out of the Second District Court of Appeal in 2006 called Long Beach Community College District versus Superior Court, which factually sounds somewhat familiar to the case that Your Honor's heard just before this one. That case involved an attempt by Mr. O'Toole, who's a plaintiff in this case, and some other people to have their pro-life views expressed on a college campus. In that case, the Second District, admittedly in an unpublished opinion, found that 52.1 must be read in conjunction with 51.7, both statutes requiring violation or intimidation by threat of violence. Finally, I would take the Court to its opinion in the Winarto case, Ninth Circuit decision, noting at page 1,289 that there is no requirement that the violence be extreme or motivated by hate in the plain language of the sections, the sections referring to 51.7 and 52.1. Thus, Your Honors, there is ample authority, which is still vital, that 51.7 and 52.1 can be read together and should be read together, and that violence is a component of a 52.1 claim, which is what Judge Fogel determined at the District Court level. It's interesting that both of you want us to read the two statutes together, and you come to diametrically opposed positions. That is, you read them together and you're home free, Judge Fogel is right, your adversary reads them together and says, no, he's wrong on both of them. That is interesting. Why is your position, I understand what both of you said, why is your position stronger than your adversary's? What is there about these statutes that makes his position wrong and your position right? It's historical. The Ralph Act or 51.7 came along in the late 70s. The Bain Act in the late 80s is sort of a, I've seen it referred to in the cases as sort of a cleanup, and to allow the language allowing threats, intimidation, and coercion to enable a plaintiff to make a claim before the violence has occurred. But the great weight of the case authority provides that the plaintiffs have to read the statutes in conjunction with one another, which is what Judge Fogel did at the lower court. So your view is that even though force might occur, violence might occur, if it hasn't occurred, then it comes into point one. But under certain circumstances for certain people, you need violence itself before you can have the benefit of point seven. Now, point seven is restricted to certain individuals. That is, it isn't a general statute like point one. Point seven is restricted to certain individuals. Is it your position that the plaintiffs qualify for any of those particular statutes? Designated areas that are in point seven? Under 51.7, they would most likely qualify as people who are either expressing their religious beliefs or their political beliefs. Their religious beliefs are what? Their religious beliefs are, and I'm probably arguing or inserting facts that are outside of the complaint, but I believe, and Mike could probably speak to this, but they are from a church ministry in Southern California is my understanding. All right. So you agree that they do qualify under point seven if there is violence? Yes. But you disagree that the threat of violence is sufficient? For that position? I'm sorry? Your best case. I'm sure that California has been dealing with this for some time. I haven't because I'm on the federal side. What's your best case of the state cases that your interpretation that threat of violence is insufficient for point seven is valid? What's your strongest case? Yeah. I'm sorry. I'm struggling with the question only because at some point the statutes sort of blur in my mind, but the cases that I'm looking at on 51.7, one is the federal case of Egan versus Schmock. And the state case would either be the Austin B case that I just cited you or would be the Austin B case that I just cited you. And Cabezuela's, which is all over cited in my papers. Cabezuela was relied on by the district court. One other point that I'd like to raise is that appellant's brief takes issue with defendant's concern or our concern that if every unlawful arrest would be a violation of 52.1, the penalties, fines and fees could pose a burden on municipalities. Mr. Millen's brief argues that the $25,000 civil penalty under 52.1A can only be brought by the attorney general and the district attorneys. My reading of that statute is that that's not the case. Civil Code section 52.1B dictates and indicates that any individual that institutes and prosecutes his or her own civil liability, or civil action, is entitled to damages under Civil Code section 52. 52 is basically the damages provision of both the Bain and Civil Rights and Ralph Civil Rights Acts. However, damages under section 52.2B include a civil penalty of $25,000 to be awarded to the person denied the right by 51.7. But 52A also sets forth a statutory scheme for penalties, and unfortunately, none of the statutes involved specifically indicates which of the two statutory schemes, penalty schemes enunciated in Civil Code section 52 apply to a 52.1 violation, such that in O'Toole versus Superior Court, the court referred to both of the damages remedies in Civil Code section 52 as a statutory source of damages, but never articulated whether it was the $25,000 civil penalty or the $4,000 civil penalty. So it's an open question, an unsettled question in all of the statutes, point being that there is significant exposure to local governmental entities, particularly in cases of mass arrest, like we're talking about here, under 52.1. Thank you for your time. Before you leave, under 52.1, what is required there? 52.1 requires threats, intimidation, and coercion. Is an arrest a threat or coercion? An arrest or a threat can be coercive, but it doesn't have to be. Is it a threat? Is an arrest a threat? I don't, under these facts and in the context of this case, I don't think so. They were, if I understand it, do I understand the facts that there was a group of people who were protesting and there was a threat and the police said if you don't leave, we'll arrest you? Or move 1,000 feet away. Move 1,000 feet or we'll arrest you. Correct. And three of them were arrested and the rest moved? Correct. And they're all plaintiffs? Correct. There's seven or eight plaintiffs in this case. And your position is that that's not sufficient under 52.1? Correct, because there's no violence or threat of violence. And you think that you need violence or threat of violence in order to come under 52.1? If that's so, why do they need 52.7, which talks about violence? 51.7? Except you're talking, the statutes talk about different categories. 51.7 only applies to protected classes, 52.1 expanded that to anyone who was exercising an individual right. What's your best case for you to win on the 52.1 issue, that is, that it doesn't require violence? If it doesn't require violence? The best case is that it does require violence and that there was no violence or there was no threat of violence in this case. What's the best case in California? What's the best case? Authority. Well, we've gone to great pains to distinguish Venegas in our briefs, and Cabezuela's would be the case under state law and under federal law. And the best case would be Rapkin or Winarto. Someone was reversed for Venegas, wasn't it? Correct. Factually extremely dissimilar, a horrible factual scenario in Venegas where three people were stopped on a car stop that eventually led to a vehicle being searched, somebody being detained for two, or jailed for two days, and when the officers at the scene made their way out, they were stopped by a car. They made a representation that they would only go to the house to get some vehicle identification information. They coerced the wife of Venegas to sign a consent allowing them to search the entire house, which is what they did. Suppose that 52.1 does not require violence. What would your position be? That there's no, the requisite threats and intimidation and coercion haven't been alleged in this case at this point, that they've only alleged that there was an unlawful arrest. The facts are that this was a civil conversation at the scene of the event, and they were asked to disperse the evidence. Get off the sidewalk, move 1,000 feet away, or they would be arrested. That under those facts... That isn't coercion? It's a request. Or arresting? I don't believe that it's coercion. To be arrested? Correct. Your oppositions would say, and probably will say, and I'll say it for him, that the wearing of a gun with even an invitation has certain coercive effect. You don't think so? I don't believe in the context of this case, this being on a public sidewalk directly in front of a high school in broad daylight, that the gun had any coercive effect. Nobody was going to draw a gun under this scenario. Maybe the officer's uniform and the badge, for most people I would assume, is pretty persuasive. And it's coercive in the sense that you can tough it out if you want to go to jail or something else, but you'll move ordinarily. I mean, we just do that. But your feeling on it is there's no coercion if the police officer just says, please move, that you have to say or else before it becomes coercive. He did say that. If there was more, they actually arrested three of them. Now, putting somebody under arrest coerces you to not do what you're doing, doesn't it? Well, at the time they assented to being arrested, that was it at that point, wasn't it? I mean, the... And you're not being coerced when you're being put in the car and all that sort of thing? Well, I don't think they're... No, it was all voluntary, frankly. They were cooperative with the police and the police were cooperative from them as the videotape that you haven't seen would show. Your Honors, with regard to the coercion, I'll just... I think the Northern District had it right in Cole, a 2005 case. Use of law enforcement to effectuate a stop, detention, including use of handcuffs and search, can constitute interference by threat, intimidation or coercion if the officer lacks probable cause to initiate the stop, maintain the detention and continue a search. That was interpreting 52.1. So it's obviously that the Northern District, this Court is reviewing a Northern District case that was post-dates Judge Fogel's ruling here. But I believe that is the best Federal case that sums up the state of the law. And counsel is right that the defense has spent great pains to distinguish Venegas, and well have they attempted to at least try, because Venegas is very, very clear that 52.1 is a get-tough statute, that it is going to apply to a lot of false arrest cases, that all it took, and counsel perfectly summed up the Venegas case. He perfectly summed up the facts of that case. All that happened in the Venegas case was they were arrested. He was arrested for allegedly committing some crime. They asked wife, would you please come with us to get husband's I.D. They kind of tricked her into signing a form which says you can search the whole house. And that was the violence. There is no violence in 52.1. And I believe Venegas, to read Venegas and suggest that there was violence needed is not fair. Why were the arrests here in the first place? Why were the arrests here? What were they doing? They were standing on the sidewalk with, some of them had literature and were passing out literature on the sidewalk, and some had signs that had pro-life sorts of messages. And what was the reason that the officers thought they should be arrested? Oh, they cited a statute which talks about going on to a school campus. And 30 years earlier, that statute had been nullified. And in any case, my clients were never on the school campus, so it really didn't matter anyway. So that's why that's not relevant. But briefly, and I — The whole thing began, the problem was it was in front of a school. That was probably the animus of government interest in the matter. I'm sure you're correct. And again, I sense that the Court here is maybe somewhat struggling with the concept that — on the definition of violence. But I guess as you're engaged in your thoughtful deliberations on this, because I know we have and I'm sure defense has too, where are you going to draw the line of what violence is under 51.7? Judge Fogel said it's any time you do an arrest, but you use extra force. You know, kind of your classic Rodney King sort of video where, hey, why didn't you just put him in the car? Why didn't you beat the fellow? Apparently, Judge Fogel thought that would be violence under 51.7. The difficulty with Judge Fogel's position is that he was, again, as I mentioned, giving the police some sort of super immunity. Because, again, no one's ever — I don't think opposing counsel, at least in the papers, has disputed the analogy, which, of course, if someone didn't have the badge of Los Gatos Monteserino and just put local KKK, in two seconds we'd say, you're using force. You had a gun. You locked him in the basement. So somehow I know it's tempting. Judge Fogel was tempted. And he, in fact, did say that because it was the police with the badge and the gun, that just an arrest and pushing him into the car, it's just not enough. It's got to be more. These are our good men and women in blue. That is — honestly, if it wasn't for Venegas, I might understand that argument. But Venegas says this is going to be a very expensive statute for cities and counties. You better get your police officers to follow the law. If you were to win, not assuming anything, but if you were to win under 51.7, would there be any reason to consider 52.1? No, there wouldn't, because 51.7 is a much harder statute to meet. And so 52.1 becomes a bit duplicative. Thank you. Thank you.
judges: Wallace, Hug, Schroeder